IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 17, 2005 Session

## RONALD E. CROOK, ET AL. v. ANGELA R. JOCK

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007316-02     George H. Brown, Jr., Judge**

_____

**No. W2004-00479-COA-R3-CV - Filed July 13, 2005**

_____

This appeal lies from a trial court's entry of a purported consent order of dismissal. The trial court entered judgment based upon the defendant's submitted consent decree. The plaintiffs contend, however, that they did not consent to the terms of the order as written and withdrew any consent prior to entry of the judgment. Because the statement of the evidence in this case is irreconcilable, we vacate the judgment of the trial court entering the consent decree.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Ronald E. Crook, *Pro se*.
Doyle B. Crook, Sr., *Pro se.*

William M. Monroe, Memphis, Tennessee, for the appellee Angela R. Jock.

**OPINION**

I.

In this appeal, we must determine whether the record supports the trial court's entry of a consent order of dismissal. Plaintiffs/Appellants Ronald E. Crook and Doyle B. Crook, Sr. (collectively "Plaintiffs"), acting *pro se*, contend that they never consented or repudiated their consent to the terms of a consent order of dismissal prior to the entry of judgment. Defendant/Appellee Angela R. Jock ("Defendant"), however, contends that the parties reached a settlement of the matter, and Plaintiffs agreed to the terms of the order after being given an opportunity to examine the decree. The record of the relevant proceedings in this case is in the form of a statement of the evidence. However, because there is such inherent and irreconcilable conflict

between the material facts provided in the statement of the evidence, we find it necessary to vacate the judgment of the trial court.

This dispute began when Plaintiffs brought an action for recovery of a debt in General Sessions Court for Shelby County against Defendant. The General Sessions Court entered judgment in favor of Plaintiffs, and Defendant appealed to the Circuit Court. On the date set for trial and at the trial judge's direction, Mr. Ronald Crook and counsel for Defendant convened in a nearby jury room to discuss a settlement of this matter. The parties apparently emerged from this settlement conference with a tentative agreement. However, the exact terms of that agreement are not entirely clear from the record. More importantly, the events that transpired between the settlement conference and the entry of the final judgment one week later are unclear from the statement of the evidence.

Following the trial court's entry of the purported consent decree, Plaintiffs filed their notice of appeal. The trial court subsequently entered an order granting Defendant's objection to Plaintiffs' statement of the evidence, thereby adopting Defendant's statement of the evidence. Because this case hinges on the facts surrounding the entry of the consent decree as presented in the statement of the evidence, we feel it is necessary to restate those facts almost in their entirety as provided in the statement of the evidence. The approved statement of the evidence provides, in relevant part, as follows:

The following facts are provided by Plaintiff:

1. In the Fall of 2002, Plaintiff filed a civil [suit] against his ex-friend, Angela R. Jock. The amount of the Complaint was just under $3,000.00 and included loans to her that she refused to repay, and non-paid back-rent owed to Plaintiff's father in the amount of $1,400.00. Due [to the] fact that Plaintiff's father is the owner of the home in which Plaintiff rented a private room for $200.00 monthly, in November 2002, Plaintiff added his father, Doyle B. Crook, Sr., to the suit as an indispensable party. At that point in time, neither party had retained legal counsel.

2. The General Sessions trial took place on December 12, 2002. . . . The Court's decision, accordingly, was an award of over $1,500.00 in favor of the Plaintiff. . . .

3. The Defendant proceeded to file a timely appeal under a pauper's oath.

. . . .

5. January 5, 2004 was the trial date. . . . Plaintiff brought with him to Court on the 5th a motion for continuance for the following reasons: (1) Plaintiff's father was ill and could not be present, and (2) Plaintiff was prepared to inform the Court

-2-

that [counsel for Defendant] had not replied to Plaintiff's many voice mails and letters suggesting that they meet and mediate. In Court, Plaintiff did not mention his father's absence, but did ask that counsels discuss possible compromises. Judge Brown directed Mr. Crook and [counsel for Defendant] to go into an adjoining jury room and have discussions. The following paragraph will adequately detail what occurred in the negotiations, and what happened afterwards. . . .

6. Once seated in the jury room, [counsel for Defendant] asked, "Mr. Crook, what is it that you want?" . . . Plaintiff replied that he wanted installment payments of $100.00 each month for five (5) months, totaling $500.00. Plaintiff also requested that the Defendant be taxed the costs of the cause. [Counsel for Defendant] left the room to confer with the Defendant. When [he returned], . . . [counsel for Defendant] offered: (1) no installment payments, (2) a split bill of costs, and (3) he demanded that part of the agreement would be that Defendant and Plaintiff be restricted to forever sta[y]ing over one thousand (1,000) fee[t] from each other. Plaintiff said that this was ludicrous because, since she had "framed" him three other times since August 15, 2003[,] Plaintiff felt that Defendant would vindictively frame him for violating a consent order. Plaintiff clearly informed [counsel for Defendant] that injunctions cannot be included in any agreement for dismissal.

7. On the 5th, Plaintiff's confusion caused him to give the false impression to counsel and the Court that he was consenting to counsel's proposed injunctive agreement. Plaintiff told counsel he must remove the injunctive ideas. Back in open [c]ourt, Plaintiff told Judge Brown that he w[ould] only consent if there were no "unfair restrictions" included in counsel's proposed document. Then Judge Brown instructed [counsel for Defendant] to prepare an agreement and consent order of dismissal, and mail it to Plaintiff before Monday, January 12, 2004. . . .

8. . . . During the week of January 5 to January 12, Plaintiff intently awaited [counsel for Defendant's] document, but it was never sent. Remembering that the Judge instructed Plaintiff to appear on January 12 if he disagreed with anything in the mailed document, Plaintiff rushed to the Court on the 12th. Judge Brown asked Plaintiff why he was there that day, and he replied that counsel had failed to send him the consent agreement, whereupon, the judge lowered his head into his hand. At that moment, [counsel for Defendant] extended his right arm with the document in it. . . . Before Plaintiff had a chance to inspect it, Judge Brown asked the Court Clerk to give the Plaintiff [a] pen and paper, and then he told Plaintiff to go sit down and write his own Agreement and Consent Order of Dismissal. . . . [Plaintiff] obeyed as instructed. After about twenty (20) minutes of deleting some of counsel's provisions and additional writings, the judge came back in and was handed Plaintiff's notations and deletions. . . . Immediately, Plaintiff gave notice to the Court and [counsel for Defendant] that he was not going to sign the Order prepared by counsel, and the judge instructed the Court Clerk to make note of that, and then Judge Brown

rendered the Order as proposed by [counsel for Defendant]. . . . Plaintiff asked Judge Brown: "What remedy would I have for this decision today?" Plaintiff was ignored and given a copy of the Order with his name stamped on it.

9. On January 7, 2004, Plaintiff had hand-delivered a letter to [counsel for Defendant] stating if the so-called Agreement had those injunctions included, he would not consent and there would have to be a trial; however, nowhere in that letter did Plaintiff say not to mail him that document[]. . . .

. . . .

The following facts are provided by the Defendant:

11. On January 5, 2004, this matter was set for trial before the Honorable George Brown. Judge Brown directed counsel and Mr. Crook to accompany the Courtroom Deputy into an adjoining jury room and have discussions, with the goal being the pursuit of a settlement in this cause.

12. In the jury room, [counsel for Defendant] spoke with Mr. Crook and then exited the jury room and spoke to his client in the hallway in an attempt to resolve this matter.

13. At the time the settlement conference was concluded, a free and voluntary settlement of all issues then outstanding before the Court was reached. Mr. Crook and [counsel for Defendant] announced the settlement to the Court and the Court approved the settlement.

14. A proposed Agreement and Consent Order of Dismissal setting out the settlement in the cause was presented to the Court on January 12, 2004.

15. On January 12, 2004, Mr. Crook indicated to the Court that he no longer wished to go forward with the settlement. The Court inquired of Mr. Crook whether or not he had agreed to the contents of the proposed Agreement and Consent Order of Dismissal the previous week, and allowed Mr. Crook a full and complete opportunity to read the proposed Agreement and Consent Order of Dismissal and make any comments.

16. Thereafter, the Court went through the proposed Agreement and Consent Order of Dismissal line by line and inquired of Mr. Crook as to whether or not he agreed to the contents of same. Mr. Crook responded that he agreed to all of the provisions of the Agreement and Consent Order of Dismissal, after completing discussions with the Court.

17. After hearing of this matter on January 12, 200[4], for the entry of the Agreement and Consent Order of Dismissal, the Court inquired as to whether or not anyone had forced Mr. Crook into this agreement. Mr. Crook responded that he had not been forced, but that he was a diabetic.

18. The Court inquired of Mr. Crook as to whether or not his physical condition rendered him unable to understand the nature and consequences of the agreements he reached on January 5, 2004. Mr. Crook replied that they did not do so.

In the Agreement and Consent Order of Dismissal, the parties purportedly agreed to the following:

1. This case will stand dismissed with the costs to be equally divided between the parties

2. The Court shall retain continuing jurisdiction over this matter for purposes of enforcing the terms and conditions of this Order.

3. The parties hereto agree that they shall not harm, molest, abuse, harass, annoy or come around one another from the date hereof.

4. The parties hereto agree that they shall maintain a distance of one thousand (1,000) yards from the residence and/or place of work of the other party.

5. The parties hereto agree that they will not contact or attempt to contact the other party, nor any of their past employers, present employers or future employers. They shall additionally refrain from contacting or attempting to contact the friends or family of the other party, pending further Orders of this Court.

6. The parties hereto agree that any information gathered in the course of this matter, whether by subpoena or otherwise, shall not be further disseminated to any entity for any purpose except for in response to a duly issued and served subpoena from a Court of competent jurisdiction.

7. The parties hereto agree that they mutually release one another from and against any and all claims, obligations, debts, causes of action, contracts, claims for personal injury or property damage, as well as any matter, fact or thing arising out of or in connection with any set of facts which occurred prior to the date of this Order. Each party shall hold the other harmless from and against any and all said liability or claims of liability set forth herein.

8. In the event that either party has to seek Court intervention for the purposes of interpreting or enforcing this Order, the prevailing party shall have his or her reasonable attorney's fees and costs of litigation paid for by the non-prevailing party. The Court shall determine the identity of the prevailing and non-prevailing party as the Court deems just and proper.

Neither plaintiff signed the Agreement and Consent Order of Dismissal. Plaintiffs appeal the entry of the consent decree and assert that they did not consent to the agreed order.

II.

The dispositive issue in this case is whether the trial court erred by entering the Agreement and Consent Order of Dismissal. After thoroughly reviewing the statement of the evidence in this case, we are unable to determine whether Plaintiffs withdrew their consent to the agreed order prior to its entry. The respective views contained in the statement of the evidence are, in the opinion of this Court, inharmonious and irreconcilable.

A consent judgment does not reflect the judgment of the court, but is merely an agreement between the parties to a lawsuit which has been placed into the record by the court. *In re Estate of Jones*, 154 S.W.2d 582, 585 (Tenn. Ct. App. 2004) (citing *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987)). Therefore, the deferential standard of review afforded to a trial court's findings of fact is inapplicable in cases like the one presently before us. *See Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 600 (Tenn. 1987). It is well-settled that, when a trial judge knows before entry of a consent judgment that one of the parties has withdrawn consent or has otherwise repudiated the agreement, the trial court lacks the power to enter the consent judgment. *Harbour*, 732 S.W.2d at 600; *In re Estate of Jones*, 154 S.W.2d at 585; *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 535–38 (Tenn. Ct. App. 2000); *Sullivan County v. Lyon*, 20 S.W.3d 676, 677 (Tenn. Ct. App. 1999). Rather, consent must "exist at the very moment the court undertakes to make the agreement the judgment of the court." *Lyon*, 20 S.W.3d at 677 (quoting *Harbour*, 732 S.W.2d at 599 (quoting *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951))).

In this case, due to the conflicting nature of the statement of the evidence, we are unable to conclude that consent existed on the part of Plaintiffs at the time the trial court entered the Agreement and Consent Order of Dismissal as the judgment of the court. Moreover, it is clear from the record that Doyle B. Crook, Sr. was neither present at the settlement conference nor included as a party to the consent decree. As previously stated, the record does not contain a transcript, which might have clarified the events that surrounded the entry of the consent decree. Instead, this Court is presented with a statement of the evidence where the facts are susceptible to two dramatically different interpretations of the proceedings surrounding the entry of the consent decree.

The judgment of the trial court is vacated. We have considered Plaintiffs' numerous other issues and consider them to be without merit or rendered moot by our decision in this case. This

case is remanded for further proceedings as may be necessary.  Costs of this appeal are taxed to Defendant/Appellee, Angela R. Jock, for which execution may issue if necessary.


                                             _____

DAVID R. FARMER, JUDGE